# EXHIBIT A



# AFTAB PUREVAL
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

ELECTRONICALLY FILED
March 17, 2021 10:51 AM
AFTAB PUREVAL
Clerk of Courts
Hamilton County, Ohio
CONFIRMATION 1045366

**SHARON BARNES**                    A 2100955

vs.
**TALBERT HOUSE**

**FILING TYPE:  INITIAL FILING (IN COUNTY) WITH JURY DEMAND**

**PAGES FILED: 14**



VERIFY RECORD

EFR200

## IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | |
|---|---|
| SHARON BARNES<br>1544 Yarmouth Ave.<br>Cincinnati, OH 45237 | CASE NO.<br><br>JUDGE: |
| Plaintiff, | |
| v. | |
| TALBERT HOUSE<br>5837 Hamilton Ave.<br>Cincinnati, OH 45224 | **COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF** |
| **Serve Also:**<br>Talbert House<br>2600 Victory Parkway<br>Cincinnati, Ohio 45206-1711 | **JURY DEMAND ENDORSED<br>HEREIN** |
| -and-<br><br>Talbert House<br>c/o Neil F. Tilow (Stat. Agent)<br>2600 Victory Pkwy.<br>Cincinnati, OH 45206 | |
| Defendant. | |

Plaintiff SHARON BARNES by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

### PARTIES, JURISDICTION, & VENUE

1. Barnes is a resident of the city of Cincinnati, Hamilton County, state of Ohio.

2. Defendant TALBERT HOUSE ("Talbert House") is an Ohio non-profit that conducts business within the state of Ohio. The relevant location of the events and omissions of this Complaint took place was at Talbert House's location at 5837 Hamilton Ave., Cincinnati, OH 45224 and its other locations.

3. Talbert House is, and was at all times hereinafter mentioned, Barnes's employer within the meaning of Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2617 et seq., R.C. § 4101 et seq., and R.C. § 4112.01(A)(2).

4. Therefore, personal jurisdiction is proper over Defendant pursuant to Ohio Revised Code §2307.382(A)(1), (2), and/or (3).

5. Venue is proper pursuant to Civ. R. 3(B)(1), (2), (3), and/or (6).

6. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

7. Barnes is a former employee of Defendant.

8. At all times noted herein, Barnes was qualified for her position with Defendant and could fully perform the essential functions of her job, with or without a reasonable accommodation.

9. Barnes is age 66 and thus is in a protected class for her age.

10. Barnes worked for Talbert House as a resident advisor (I) from June 19, 2017 until Talbert House unlawfully terminated Barnes' employment on or about April 9, 2020.

11. Barnes was an exceptional employee for Talbert House. She had no performance or attendance issues and was even recognized as having exceptional customer service during her first two years with the nonprofit.

12. Things changed for the negative for Barnes, however, on or about June 27, 2019. That day, Barnes and another employee felt that they were being evaluated unfairly.

13. Barnes and the other employee emailed Brian Green (supervisor of housing) and Brion Jones (HR) complaining about Queshell Redmond's (housing supervisor (I) at Hamilton Place) treatment of them at work.

14. Barnes had met with Green multiple times over the past two months regarding Redmond's attitude with her, which Barnes felt aggressive and retaliatory.

15. After Barnes and the others filed their formal written complaints, Redmond emailed her subordinates telling them not to steal food.

16. Consistently, those who spoke out against Redmond would be fired. Dion Black and Aaron Israel were the first examples, with Camille Davis and Shontelle Turley resigning later due to Redmond's retaliation against them for their complaints.

17. Barnes, despite her complaints, was not fired (despite Redmond's targeting), she was simply too good at her job to eliminate.

18. In or around July 2019, Talbert House had an all-staff meeting. In the meeting, Barnes complained about how Redmond was never on site. Third shift at the location had also complained that Redmond came into work appearing to be inebriated on multiple occasions.

19. This issue, tied with some changes to health assessment forms forced by Barnes, furthered Redmond's issues with her.

20. Regarding the health assessment forms, there had been a recent change requiring the resident advisors to perform health intakes for new patients – something for which Barnes was not qualified.

3

21. Barnes refused to perform the intakes specifically citing her lack of qualification, which caused further issues with Redmond. Ultimately, the issue with the intake assessments was fixed.

22. Going forward, Barnes had only minor issues (particularly with Redmond). She continued to work hard and well and train new employees.

23. Otherwise, Barnes' employment was generally positive until the COVID-19 pandemic hit the United States in or around spring 2020.

24. In or around mid-March 2020, Barnes spoke with Jones about how she no longer felt safe at work due to the pandemic and Talbert House's inadequate response – a protected complaint regarding workplace safety.

25. Barnes had a coworker and a face-to-face meeting with a client who coughed throughout the day.

26. Barnes complained about the lack of masks from Talbert House (a protected complaint regarding lack of personal protective equipment ("PPE")).

27. Barnes reiterated these same concerns also to Jones (and to James Wilson (Vice President of Housing)) and mentioned that she was older and had health issues, so she needed a mask for work.

28. Talbert House told Barnes only to disinfect surfaces and wash hands, which was not enough to adequately address the problem and was standard protocol even prior to the pandemic.

29. Barnes then inquired about FMLA leave for her husband's serious health conditions. This gave notice of her protected disability class by association to Defendant.

30. Barnes' request for FMLA for her husband's serious health condition was denied.

4

31. Shortly after the call with Jones on or about March 13, 2020 denying the FMLA, Barnes put in a request to use her PTO and/or sick time with Redmond from March 17, 2020 to April 11, 2020 instead.

32. On or about April 3, 2020, Barnes' doctor also sent an email to Talbert House taking her off work through April 30th because of the pandemic and Barnes' higher-risk status.

33. While out on leave, Barnes received an email saying that she was an essential employee saying that she was "on the front lines" and had to "keep working, business as usual."

34. Redmond did allow Barnes to use her vacation until April 10, 2020, however.

35. On or about April 3, 2020, after an evaluation with her doctor, Barnes had a note provided to Talbert House taking her off work through April 30, 2020 due to her "high risk."

36. Barnes followed the note up with calls on or about April 6th and 7th to ensure Jones had received the note.

37. Jones had not, so he checked with Redmond, who had received it on the 3rd.

38. On or about April 8, 2020, Jones told Barnes that her employment would end on the 9th.

39. On or about April 9, 2020, Barnes' employment was officially terminated.

40. Also on or about April 3, 2020, Talbert House emailed its employees noting a temporary layoff for several staff members; this did not include Barnes.

41. Notably, this termination came as Barnes was in the process of applying for FMLA, constituting clear interference with her FMLA rights.

42. Within only a few short weeks of Barnes' request for FMLA, Barnes' employment was terminated. It was not until *after* her termination that Barnes received her FMLA documentation.

5

43. After Barnes' termination from Talbert House, purportedly cited as a business restructuring action, it left her position open to a new hire.

44. Within only a few short weeks of Barnes' protected complaints regarding workplace safety and lack of proper PPE, her employment was terminated, purportedly as her position had been eliminated.

45. This was only a few days after Barnes had been told that she was not being laid off.

46. At the time of her termination, Barnes was the only one fired. When one person is let go, this is a termination, not a layoff.

47. Further, Barnes' previous position was posted open after her termination.

48. Defendant's termination of Barnes was an adverse employment action against her.

49. Defendant's purported reason(s) for Barnes's termination was pretextual.

50. Defendant actually terminated Barnes's employment discriminatorily against her age, her disabilities, to interfere with her FMLA rights, in retaliation against her workplace safety complaints, and/or in retaliation against her protected complaints.

51. As a result of the above, Barnes has suffered damages.

**COUNT I: AGE DISCRIMINATION IN VIOLATION OF R.C. §4112, *et seq.***

52. Barnes restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

53. Barnes is 66 years old, and thus is in a protected class for her age.

54. R.C. § 4112 *et seq.* provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's age.

55. Defendant treated Barnes differently than other similarly situated employees based upon her age.

6

56. Defendant's termination of Barnes was an adverse employment action against her.

57. Defendant's purported reason(s) for Barnes's termination was pretextual.

58. Defendant actually terminated Barnes's employment due to her age.

59. Defendant violated R.C. § 4112 et seq. by terminating Barnes because of her age.

60. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating Barnes differently from other similarly situated employees outside her protected class.

61. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their employment policies in a disparate manner based on Barnes's age.

62. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their disciplinary policies in a disparate manner based on Barnes's age.

63. Barnes incurred emotional distress damages as a result of Defendant's conduct described herein.

64. As a direct and proximate result of Defendant's acts and omissions, Barnes has suffered and will continue to suffer damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112, *et seq.*

65. Barnes restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

66. Barnes is in a protected class for her and her family's disabilities (described *supra*).

67. R.C. § 4112 *et seq.* provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's and their close associate's (e.g. their husband's) disabilities.

68. Defendant treated Barnes differently than other similarly situated employees based upon her disability.

7

69. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by treating Barnes differently from other similarly situated employees outside her protected class.

70. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their employment policies in a disparate manner based on Barnes's disability.

71. Defendant violated R.C. § 4112.02 and R.C. § 4112.99 by applying their disciplinary policies in a disparate manner based on Barnes's disability.

72. Barnes incurred emotional distress damages as a result of Defendant's conduct described herein.

73. As a direct and proximate result of Defendant's acts and omissions, Barnes has suffered and will continue to suffer damages.

### COUNT III: RETALIATION

74. Barnes restates each and every prior paragraph of this complaint, as if it were fully restated herein.

75. As a result of the Defendant's discriminatory conduct described above, Barnes complained of the discrimination, harassment, and disparate treatment she was experiencing.

76. Subsequent to Barnes's complaints to management about harassment, bullying, and disparate treatment toward her, Defendant took adverse employment actions against Barnes, including, but not limited to, terminating her employment.

77. Defendant's actions were retaliatory in nature based on Barnes's opposition to the unlawful discriminatory conduct.

78. Pursuant to R.C. § 4112 et seq., it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

8

79. As a direct and proximate result of Defendant's retaliatory discrimination against and discharge of Barnes, she has suffered and will continue to suffer damages.

### COUNT IV:  UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

80. Barnes restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

81. Pursuant to 29 U.S.C. § 2601 et seq., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

82. Defendant is a covered employer under the FMLA.

83. Barnes was an employee eligible for FMLA due to her and her family's severe health conditions (described *supra*) and her tenure of employment.

84. During her employment, Barnes qualified for and inquired about FMLA leave due to her and her family's serious health conditions.

85. During her employment with Defendant, Barnes was unable to receive FMLA benefits.

86. Defendant unlawfully interfered with Barnes's exercise of her rights under the FMLA in violation of § 105 of the FMLA and § 825.220 of the FMLA regulations.

87. Defendant's refusal to provide Barnes with information pertaining to FMLA leave and/or permit Barnes to take FMLA leave violated and interfered with her FMLA rights.

88. As a direct and proximate result of Defendant's conduct, Barnes suffered and will continue to suffer damages.

89. As a direct and proximate result of Defendant's conduct, Barnes is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorneys' fees.

9

## COUNT V: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

90. Barnes restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

91. A clear public policy exists and is manifested in Ohio and federal statutes, including Governor DeWine's Stay-At-Home Order, the FFCRA, R.C. § 4101.11 and/or § 4101.12, and/or administrative regulations, or in the common law, in favor of providing workers with a healthy and safe work environment, and against terminating an employee based on complaints of unsafe working conditions caused by the COVID-19 pandemic and/or other causes.

92. Barnes repeatedly made reports to Defendant about the unethical, unlawful, and/or policy-violating behavior that was going on there, including, but not limited to, unsafe working conditions caused by unsafe working conditions related to the coronavirus pandemic and other things.

93. Defendant's termination of Barnes's employment jeopardizes these public policies by undermining the authority of Gubernatorial orders, federal relief policies, and state statutes.

94. Defendant's termination of Barnes's employment was motivated by Barnes's conduct related to these public policies because of the risk to her and to the public's health.

95. Defendant's purported reason for Barnes's termination was pretextual.

96. Defendant actually terminated Barnes's employment to prevent an FFCRA claim.

97. Defendant's termination of Barnes jeopardizes these public policies.

98. Defendant's termination of Barnes was motivated by conduct related to these public policies.

99. Defendant had no overriding business justification for terminating Barnes.

10

100.    As a direct and proximate result of Defendant's conduct, Barnes has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VI: VIOLATION OF OHIO WHISTLEBLOWER STATUTE R.C. § 4113.52

101.    Barnes restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

102.    As set forth above, Barnes repeatedly made oral and written reports to Defendant about unethical, unlawful, and/or policy-violating behavior.

103.    Barnes repeatedly and consistently reported to Defendant what she reasonably believed to be unethical and/or illegal conduct in the workplace in violation of the law and company policies.

104.    In the alternative, Barnes reasonably believed she was reporting unethical and/or illegal behavior, in violation of the law and company policies, that constituted criminal acts that threatened the public's health or safety.

105.    Talbert House terminated Barnes's employment.

106.    Defendant's purported reason for Barnes's termination was pretext.

107.    Defendant retaliated against Barnes by terminating her employment based on her complaints regarding this conduct.

108.    Defendant's termination of Barnes's employment was in violation of R.C. § 4113.52.

109.    As a direct and proximate result of Defendant's conduct, Barnes suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

11

## **DEMAND FOR RELIEF**

WHEREFORE, Barnes demands from Defendant the following:

a) Issue a permanent injunction:

    i.   Requiring Defendant to abolish discrimination, harassment, and retaliation;

    ii.   Requiring allocation of significant funding and trained staff to implement all changes within two years;

    iii.   Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    iv.   Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    v.   Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge her personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Barnes for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

12

e)  An award of reasonable attorneys' fees and non-taxable costs for Barnes's claims as allowable under law;

f)  An award of the taxable costs of this action; and

g)  An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

_/s/ Matthew G. Bruce_
Matthew G. Bruce (0083769)
Trial Attorney
Evan R. McFarland (0096953)
**THE SPITZ LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH  45246
Phone: (216) 291-0244 x173
Fax:    (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com

*Attorneys for Plaintiff Sharon Barnes*

13

## JURY DEMAND

Plaintiff Sharon Barnes demands a trial by jury by the maximum number of jurors permitted.

_/s/ Matthew G. Bruce_
Matthew G. Bruce (0083769)

14

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO


SHARON BARNES
  **PLAINTIFF**

           -- vs --

TALBERT HOUSE
  **DEFENDANT**

Use below number on
all future pleadings

No.  A 2100955
      SUMMONS


TALBERT HOUSE
CO NEIL F TILOW STAT AGENT         D - 1
2600 VICTORY PARKWAY
CINCINNATI OH 45206


You are notified
that you have been named Defendant(s) in a complaint filed by

    SHARON BARNES
    1544 YARMOUTH AVE
    CINCINNATI OH 45237

                           Plaintiff(s)

in the Hamilton County, COMMON PLEAS CIVIL Division,
**AFTAB PUREVAL, 1000 MAIN STREET  ROOM 315,
CINCINNATI, OH 45202.**
You are hereby summoned and required to serve upon the plaintiff's
attorney, or upon the plaintiff, if he/she has no attorney of record, a
copy of an answer to the complaint within twenty-eight (28) days after
service of this summons on you, exclusive of the day of service. Your
answer must be filed with the Court within three (3) days after the
service of a copy of the answer on the plaintiff's attorney.

Further, pursuant to Local Rule 10 of Hamilton County, you are also required to
file a Notification Form to receive notice of all future hearings.

If you fail to appear and defend, judgement by default will be rendered
against you for the relief demanded in the attached complaint.


Name and Address of attorney
MATTHEW G BRUCE
11260 CHESTER ROAD
SUITE 825
CINCINNATI        OH      45246

AFTAB PUREVAL
Clerk, Court of Common Pleas
   Hamilton County, Ohio

By  RICK HOFMANN
               Deputy

Date:  March 18, 2021



D131385017



VERIFY RECORD

```
                    COURT OF COMMON PLEAS
                    HAMILTON COUNTY, OHIO




SHARON BARNES
     PLAINTIFF
                                              Use below number on
                                              all future pleadings

        -- vs --
                                       No.  A 2100955
                                              SUMMONS
TALBERT HOUSE
     DEFENDANT


     TALBERT HOUSE
     5837 HAMILTON AVE                 D - 1
     CINCINNATI OH 45224




You are notified
that you have been named Defendant(s) in a complaint filed by

     SHARON BARNES
     1544 YARMOUTH AVE
     CINCINNATI OH 45237

                                                     Plaintiff(s)
in the Hamilton County, COMMON PLEAS CIVIL Division,
AFTAB PUREVAL, 1000 MAIN STREET  ROOM 315,
CINCINNATI, OH 45202.
You are hereby summoned and required to serve upon the plaintiff's
attorney, or upon the plaintiff, if he/she has no attorney of record, a
copy of an answer to the complaint within twenty-eight (28) days after
service of this summons on you, exclusive of the day of service. Your
answer must be filed with the Court within three (3) days after the
service of a copy of the answer on the plaintiff's attorney.

Further, pursuant to Local Rule 10 of Hamilton County, you are also required to
file a Notification Form to receive notice of all future hearings.

If you fail to appear and defend, judgement by default will be rendered
against you for the relief demanded in the attached complaint.


Name and Address of attorney            AFTAB PUREVAL
MATTHEW G BRUCE                         Clerk, Court of Common Pleas
11260 CHESTER ROAD                        Hamilton County, Ohio
SUITE 825
CINCINNATI        OH        45246
                                        By  RICK HOFMANN
                                                        Deputy

                                        Date:   March 18, 2021
```



D131384950



VERIFY RECORD

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

SHARON BARNES
**PLAINTIFF**

     -- vs --

TALBERT HOUSE
**DEFENDANT**

        TALBERT HOUSE
        2600 VICTORY PARKWAY
        CINCINNATI OH 45206

Use below number on
all future pleadings

No.  A 2100955
       SUMMONS

     D - 1

You are notified
that you have been named Defendant(s) in a complaint filed by

        SHARON BARNES
        1544 YARMOUTH AVE
        CINCINNATI OH 45237

                                                   Plaintiff(s)

in the Hamilton County, COMMON PLEAS CIVIL Division,
**AFTAB PUREVAL, 1000 MAIN STREET  ROOM 315,**
**CINCINNATI, OH 45202.**
You are hereby summoned and required to serve upon the plaintiff's
attorney, or upon the plaintiff, if he/she has no attorney of record, a
copy of an answer to the complaint within twenty-eight (28) days after
service of this summons on you, exclusive of the day of service. Your
answer must be filed with the Court within three (3) days after the
service of a copy of the answer on the plaintiff's attorney.

Further, pursuant to Local Rule 10 of Hamilton County, you are also required to
file a Notification Form to receive notice of all future hearings.

If you fail to appear and defend, judgement by default will be rendered
against you for the relief demanded in the attached complaint.

Name and Address of attorney
MATTHEW G BRUCE
11260 CHESTER ROAD
SUITE 825
CINCINNATI       OH       45246

AFTAB PUREVAL
Clerk, Court of Common Pleas
    Hamilton County, Ohio

By   RICK HOFMANN
                  Deputy

Date:   March 18, 2021



D131385032

VERIFY RECORD